STATE OF WASHINGTON )
) No. 40031-0-III
Respondent, )
)
v. ) UNPUBLISHED OPINION
)
LONNIE KAYE ENGLAND, )
)
Appellant. )

FEARING, J. — In 2023, this court remanded for resentencing of Lonnie England's convictions for child molestation. In a new appeal and in a statement of additional grounds for review, England seeks revisions to the resentence. We grant his request to strike the imposition of community custody supervision fees. We deny his request to void interest on restitution and other requests stated in his statement of additional grounds.

## FACTS

On March 8, 2021, the State charged Lonnie England with two counts of child molestation in the first degree. The amended information provided that the charging period for both crimes was between January 1, 1998, and December 31, 2001. England pled guilty to the charges that same day, March 8, 2021. In his statement on plea of guilty, England described in his own words what he did that made him guilty of the crimes charged:

No. 40031-0-III
*State v. England*

> Count 1: On or between January 1, 1998 and December 31, 2001,
> I had sexual contact for the purpose of sexual gratification with JRM.
> Count 2: On or between January 1, 1998 and December 31, 2000,
> I had sexual contact for the purpose of sexual gratification with AF.
> These incidents occurred in Chelan County, Washington.

Clerk's Papers (CP) at 12 (boldface omitted).

Lonnie England appealed his sentence to this court. In an unpublished opinion, filed May 16, 2023, this court addressed two issues:

> First, when the sentencing court must sentence in accordance with the law in effect at the time of the offense and when the offense could have occurred at a time during which version 1 of the law applied or version 2 of the law applied, but we do not know for sure what date applies, do we apply version 1, which is the earlier and milder version, or version 2 to the sentencing? and (2) Second, does an offender acknowledge that he committed a crime after September 1, 2001 when he admits that he committed the crime sometime between January 1, 1998 and December 31, 2001?

CP at 37 (page 1 of the opinion). This court held that the sentencing court erred in sentencing England under a statute that became effective after September 1, 2001, when the charging period for the crimes was from January 1998 to December 2001. England's admission to committing a crime sometime before December 2001 did not equate to admitting to have committed a crime after September 1, 2001. This court remanded for resentencing under the sentencing scheme effective before September 1, 2001.

PROCEDURE

On remand from this court, the superior court conducted four status hearings before resentencing Lonnie England on October 11, 2023. A September 27, 2023, status

2

hearing bears relevance to an issue raised by England in one of his statements of additional ground. At that hearing, over which Judge Travis Brandt presided, England's attorney, Jeremy Ford, announced the State informed him that, if England requested a sentence lower than the agreed sentence in the 2021 plea agreement, the State would move to refile charges it had dismissed pursuant to that plea deal. Ford explained to the court his desire to speak with England on the issue before the matter proceeded. The court agreed that discussion with England would be appropriate as England's intent to request a lesser sentence "could have a significant effect" on his choices going forward. 1 Report of Proceedings (1 RP) at 48. The court continued resentencing for October 11, 2023.

At the October 11, 2023, hearing, over which Judge Robert Jourdan presided, the superior court calculated Lonnie England's standard sentencing range as being 67 months to 89 months. Defense counsel agreed with the court and the prosecution that England remained bound by the 2021 plea deal. Still, because of a request made by England, defense counsel asked that the court impose the lower part of the sentencing range.

During the October 11 hearing, the superior court asked Lonnie England if he wished to speak. England remarked that copies of documents he received from his attorney before the hearing contained mistakes, including the date of one of the crimes. England also requested the opportunity to admit new evidence.

At the conclusion of the October 11, 2023 hearing, the superior court denied Lonnie England's request to entertain new evidence. The court imposed a determinate sentence of 89 months on both counts, to run concurrently, with 36 months of community custody. The court found England indigent, waived legal financial obligations, imposed restitution, and levied community custody supervision fees.

During the October 11 resentencing hearing, the superior court and counsel for the parties discussed restitution:

> MS. MEADOWS [the State's attorney]: Your Honor, under the previous judgment and sentence, the payment plan, because there was restitution ordered, was $15 a month commencing immediately, which is what I've entered here to reflect that.
> THE COURT: That's fine. If there is restitution then that should continue. That's not waivable. Anything I forgot, Mr. Ford?
> MR. FORD [defense counsel]: Not that I know of, Your Honor.

2 Report of Proceedings (2 RP) at 20. Neither defense counsel nor England requested that the court consider waiving interest on the restitution.

The superior court filed Lonnie England's amended judgment and sentence on October 11, 2023. The amended judgment and sentence provides that both offenses occurred between January 1, 1998, and December 31, 2001.

LAW AND ANALYSIS

Interest on Restitution

On appeal, Lonnie England faults the superior court for, at resentencing, not waiving interest on restitution because of his indigency. England relies on an amendment

4

to RCW 10.82.090(2) effective July 1, 2023, months before the resentencing. He asks

that this court remand the sentence again for the court to weigh the factors listed in the

statute. The State argues that the superior court committed no error when declining to

consider the factors enumerated in RCW 10.82.090(2) at resentencing because the court

need only review the factors if the court ponders whether to waive interest. The State

adds that England waived any error because he did not request a declination of interest on

restitution before the superior court. We agree with the State's first contention and do not

address the State's second argument.

A 2023 amendment to RCW 10.82.090, effective July 1, 2023, grants trial courts

discretion in deciding whether to waive interest on restitution. The amended statute

provides:

> (2) The court may elect not to impose interest on any restitution the
> court orders. *Before determining not to impose interest* on restitution, the
> court shall inquire into and consider the following factors: (a) Whether the
> offender is indigent as defined in RCW 10.01.160(3) or general rule 34; (b)
> the offender's available funds, as defined in RCW 10.101.010(2), and other
> liabilities including child support and other legal financial obligations; (c)
> whether the offender is homeless; and (d) whether the offender is mentally
> ill, as defined in RCW 71.24.025. The court shall also consider the
> victim's input, if any, as it relates to any financial hardship caused to the
> victim if interest is not imposed. The court may also consider any other
> information that the court believes, in the interest of justice, relates to not
> imposing interest on restitution. *After consideration of these factors, the
> court may waive* the imposition of restitution interest.

RCW 10.82.090(2) (emphasis added). The State impliedly concedes that the 2023

amendment applies to Lonnie England's resentencing on October 11, 2023. Courts apply

a new rule for the conduct of criminal prosecutions to all cases, state or federal, pending on direct review or not yet final. *In re Personal Restraint of Eastmond*, 173 Wn.2d 632, 634, 272 P.3d 188 (2012). The parties agree that the court did not consider factors (a) through (d) of the statute at resentencing.

Our fundamental objective when interpreting a statute is to ascertain and give effect to the legislature's intent. *Pipe Fitters Local Union 120 Pension Plan v. McFarlane*, 33 Wn. App. 2d 277, 560 P.3d 863, 869 (2024). If the meaning of the statute is plain on its face, then we must give effect to that meaning as an expression of legislative intent. *Department of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Absent ambiguity, a statute's meaning must be derived from the wording of the statute itself without judicial construction or interpretation. *Fray v. Spokane County*, 134 Wn.2d 637, 649, 952 P.2d 601 (1998). This court cannot question the wisdom of legislative policy and must enforce the statute as written. *Duke v. Boyd*, 133 Wn.2d 80, 87-88, 942 P.2d 351 (1997). We assume that the legislature means exactly what it says and we do not perform statutory interpretation when the meaning of a statute is unambiguous. *Purdy-Bolland v. Graham*, 27 Wn. App. 2d 282, 292-93, 535 P.3d 444 (2023).

One might expect the legislature to wish that the sentencing court exercise discretion and consider all of the statutory factors regardless of it imposing interest on restitution or denying an imposition of interest on restitution. But RCW 10.82.090(2)

directs the court to consider the factors only "before determining not to impose interest."

If the legislature wanted the court to exercise discretion under either scenario, it would

have or should have written the statute differently.

## Community Custody Supervision Fees

Lonnie England argues that, because an amendment to RCW 9.9A.703 no longer

permits the imposition of community custody supervision fees, the superior court erred in

ordering him to pay community custody supervision fees at resentencing. Therefore,

remand is necessary to strike the community custody supervision fees. The State agrees

that the change in the law applies and that remand to strike the fees is the proper remedy.

Beginning on July 1, 2022, Washington courts may not impose community

custody supervision fees. SECOND SUBSTITUTE H.B. 1818, 67th Leg., Reg. Sess.

(Wash. 2022); RCW 9.94A.703. We agree with the parties and direct the striking of the

supervision fees.

## Scrivener's Error

Lonnie England argues that remand is also necessary to correct a scrivener's error

in his amended judgment and sentence. According to England, the document should

reflect that his offenses occurred between January 1, 1998, and December 31, 2000, not

between January 1, 1998, and December 31, 2001. The State denies any scrivener's error

because the dates in England's judgment and sentence comport with the dates in the

second amended information.

7

The record holds conflicting information as to the correct charging period for

Lonnie England's crimes. England's amended information, filed on March 8, 2021,

reflects that the crimes occurred between January 1, 1998, and December 31, 2001.

In England's original statement of defendant on plea of guilty, he described his criminal

conduct as:

> Count 1: On or between January 1, 1998 and December 31, 2001,
> I had sexual contact for the purpose of sexual gratification with JRM.
> Count 2: On or between January 1, 1998 and December 31, 2000,
> I had sexual contact for the purpose of sexual gratification with AF.
> These incidents occurred in Chelan County, Washington.

CP at 12.

At Lonnie England's first sentencing hearing, the superior court asked him the

following questions:

> [THE COURT:] All right. Sir, you're charged in the Second
> Amended Information with Count I, Child Molestation in the First Degree,
> alleging this happened on or between January 1st, 1998, and December
> 31st, 2001, and the victim in this case being [J]. The maximum penalty for
> this Class A felony crime is life in prison and/or a $50,000 fine. How do
> you plead, guilty or not guilty?
> THE DEFENDANT: Guilty.
> THE COURT: As to Count II, Child Molestation in the First Degree,
> the allegation is that this occurred on or between January 1st, 1998, and
> December 31st, 2001. The victim in this case and this charge is [A]. And,
> again, the maximum penalty is life in prison and/or a $50,000 fine. How do
> you plead?
> THE DEFENDANT: Guilty.
> THE COURT: All right. And in your plea form, it gives your
> statement about what you did. And it says in paragraph 11, "Count I: On or
> between January 1st, 1998, and December 31st, 2001, I had sexual contact

for the purpose of sexual gratification with [Jane]."  "Count II: On or
between January 1st, 1998, and December 31st, 2000, I had sexual contact
for the purpose of sexual gratification with [Arthur]."  These incidents
occurred in Chelan County, Washington.  Is that what happened here?
          THE DEFENDANT: Yes.

CP at 42-43 (pages 6-7 of the opinion) (quoting RP (Mar. 8, 2021) at 243-45)).

In our 2023 opinion, this court noted that the amended charging period for both

crimes was between January 1, 1998, and December 31, 2001, but recognized that Lonnie

England's admission in his plea agreement regarding count 1 extended to December 31,

2001, while his admission for count 2 extended only to December 31, 2000.  This court

wrote that "[t]he only underlying facts before the sentencing court and presented to this

court on review establish the dates of the crimes as sometime between January 1, 1998

and December 31, 2000."  CP at 52.  Nevertheless, this court held that "Lonnie England's

sentencing court erred when sentencing England under a sentencing statute effective after

September 1, 2001 *when the charging period extended from January 1998 to December*

*2001*."  CP at 38 (emphasis added).

Although the record holds conflicting information as to the correct charging period

for both crimes, the information available weighs in favor of the correct charging period

being between January 1, 1998, and December 31, 2001.  Because this court recognized

that the charging period for both crimes was between January 1, 1998, and December 31,

2001, and because England's amended judgment and sentence reflects the charging

9

period as being between those dates, we conclude the superior court committed no scrivener error.

Statement of Additional Grounds for Review

Lonnie England identifies six additional grounds for review in his statement of additional grounds: (1) "Cost of Incarceration," (2) "'CVC' Double Charged," (3) "Plea + Help," (4) "Unsuppressed Fact," (5) "Denial of Discovery," and (6) "Presumption." Statement of Additional Grounds (SAG) at 1.

Lonnie England argues that, because he was found indigent at sentencing, both in 2021 and 2023, the State must refund his family members for deposits to his jail commissary. England's indigency status is unrelated to whether his family members are indigent and whether they are entitled to be reimbursed for the funds contributed to his commissary account. England does not forward any law favoring his position.

Lonnie England next argues that the resentencing court added crime victim compensation to his legal financial obligation total. He adds that the Department of Corrections deducted almost $700 from money his family gave for purchases at the commissary. According to England, his judgment and sentence and collection agreement, as defined in RCW 9.94A.030, do not allow such double collection or unlimited collection of the crime victim compensation. Therefore, the Department of Corrections must return the funds to his family. This argument repeats his first statement of additional grounds.

10

We encounter difficulty understanding Lonnie England's contention labeled

"please + help."  He may assert that he asked his attorney to request a lesser sentence

than that outlined in the plea agreement at the September 2023 hearing with Judge

Brandt.  According to England, the superior court stated, at the September hearing, that it

would entertain some of the idea for "England's Benefit."  England fails to cite to the

page in the record where the court purportedly uttered this comment.  He maintains that,

by making this statement, the superior court opened the door for him to bring a motion to

prove his innocence.  Then, England explains that, after the September 27, 2023, status

hearing, his attorney informed him that the State had contacted the attorney to comment

that any reduced sentence would violate the plea agreement.  England further relates that,

at the October 11, 2023, sentencing hearing, he received documents from his attorney that

included incorrect information, so he did not sign them.

According to Lonnie England's plea help argument, a different judge presided

over his resentencing hearing and the new judge would not act on Judge Brandt's

recommendation for a motion to show innocence.  England asserts that he could neither

hear his counsel nor the State's attorney during the remote hearing.  England writes in his

statement of additional grounds:

> The plea deal/[a]greement does need to be argued, because like it
> states in the record, [i]t was wrote [sic] under 2021 [l]aws, which has life as
> part of the range and range needs to be argued since 89 months is the MAX
> of that [r]ange, [a]lso [d]ates need changed as well as community custody,
> so since many critical changed need to be done, [y]es, I agree that the plea

11

deal/agreement from 2021 is void and [j]udge [sic] has right not to use plea
agreement and could sentence me between 60-89 months, hopefully on the
[l]ow end, particularly for a person who has <u>ZERO</u> record.  The door was
opened for discussion in 10/11/23 transcripts.  Ms[.] Meadows [r]efuses to
change dates."

SAG at 12 (some alterations added).  To repeat, we cannot discern the argument asserted

by Lonnie England.  England cites no law in his favor.

In this fourth additional ground, Lonnie England focuses on the suppression of

statements made by victim J. in an interview taken by the defense.  According to

England, the prosecution suppressed the statements at trial because the defense proved

the statements to be lies.  According to England, the State's attorney, during the

resentencing, confirmed the false nature of the statements and opened the door for him to

show his innocence of one or more of the charged crimes.

During the resentencing hearing, the State's attorney did not discuss statements

made by J. previously suppressed.  Counsel commented during resentencing:

> I did review the victim [J.'s] impact statement filed in this case.
> And, just in light of what I anticipate Mr. England to argue for, it was very
> clear to me that one of the victims in this case indicated, she said this is the
> exact reason why I never came forward or even had the intention of coming
> forward.  I was afraid that I wouldn't be believed, that justice wouldn't be
> served.  So, instead, I went to a therapist to begin sifting through and
> uncovering all of the copious amounts of trauma I needed to unpack so that
> I could heal from it.  But, that's not what happened.
> Instead, I got throw into the justice system, against my will, and had
> to endure all of the things I was trying to avoid.  I had to relive my abuse
> time and time again.  She later says, during the last four years it began to
> feel once again like my abuser, Lonnie, had taken the reins of my life to
> control it.  My moods have been dictated by this Court case.  It's been a

> relentless, seemingly never-ending wait game, waiting game, where I have just had to sit and hope and pray that justice would be served, while my— while in the meantime, it felt like my abuser was benefiting off the justice system and being allowed to just continuously push off the inevitable.
>
> Those words in particular felt applicable after I heard Mr. England was going to be asking for a lesser sentence, Your Honor. After an appeal, on an agreed sentencing recommendation.

2 RP at 14-15 (alteration added).

Lonnie England next argues that, because of many changes in the law since 2001 and because this court issued a mandate for resentencing, the superior court should have reviewed anew the "whole case" at resentencing. SAG at 22. England writes that he intended to "use CR 59 and C[R] 60 rules to prove [his] innocence," before quoting language allegedly found in *State v. Dunbar*, 27 Wn. App. 2d 238, 532 P.3d 652 (2023). SAG at 23. We do not, however, find the language he cites in the *Dunbar* opinion. England cites no law supporting his position that the superior court should have considered his guilt or innocence or completely resentenced him on the earlier remand.

Lonnie England's sixth additional ground asserts he intended, at resentencing, to employ court rules to introduce new evidence of his innocence. After submitting new evidence, he would change his plea and move for dismissal. This additional ground repeats arguments asserted in earlier grounds.

## CONCLUSION

We remand for the superior court to erase the imposition of community custody supervision fees. Otherwise, we affirm the resentencing of Lonnie England.

13

No. 40031-0-III
*State v. England*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

I CONCUR:                                    I CONCUR IN RESULT ONLY:

_____             _____
Lawrence-Berrey, C.J.                        Staab, J.